William W. Serra, J.
The defendant has been indicted for the larceny of an automobile and also for a burglary and for the larceny of a flashlight. Part of the evidence against him consists of certain admissions and a signed confession as to the automobile. Motion is made to suppress the confession and admissions as involuntary pursuant to section 813-g of the Code of Criminal Procedure, and a hearing has been had thereon.
A village police officer from the defendant’s home community of Limestone, New York, testified that after talking to a State Trooper at about 1 o’clock on September 3, 1966, he went to Bradford, Pennsylvania, and met the defendant on *269 the street in that city at about 3:30 p.m. He asked the defendant if he would accompany him to the police station, which he did. The officer was in uniform at the time. At the police station the defendant said something about a truck but did not want to discuss it. The officer told him he could not take him back but advised him to go back to New York State. The officer called defendant’s parents who came to Pennsylvania and took defendant back. By prearrangement they all met in Limestone, New York, about 15 minutes later. It was then about 5 o’clock. He drove the defendant in the police car to the State Police station at Allegany, New York, about 45 minutes’ drive, while handcuffed to the car. The officer was vague about the defendant’s admissions as the defendant did little talking about the charges en route. The officer admittedly did most of the talking, which he described as a “fatherly brow-beating ” as he knew the defendant and was “ attached ” to him. At the State Police station the defendant waited in a chair for about 45 minutes in the custody of the village police officer until a State Police investigator came. The investigator took him into a private office where he advised him he had the right to remain silent, he had the right to the aid of counsel, he had the right to the aid of free counsel and that anything he might say could be used against him in a criminal action. This was the first advice of rights. There followed immediately an interrogation which culminated 45 minutes later in a signed statement largely exculpatory in its tone but which legally amounts to a confession as to the auto theft. Admissions of knowledge of the burglary and lamp theft were also taken orally. The officer remembers the other conversations only in general terms. The second paragraph of the confession which the defendant read and signed, states as follows: ‘ ‘ I have been advised by Inv. H. J. Panus that I do not have to talk and that anything that I say will be used against me in a criminal action. I have been further advised that I have the right to the aid of counsel or an attorney and that an attorney will be furnished to me for free if I so desire. I do not want an attorney at this time. I make this statement of my own free will and no threats or promises have been made to me. ’ ’
It is obvious that all of the admissions to the village police officer must be excluded under the rules laid down in Miranda v. Arizona (384 U. S. 436).
A more difficult question is presented by the statement and admissions to the State Police investigator. The warnings required by Miranda were clearly and succinctly stated. No express waiver was given of rights until the statement was *270 signed, nor was any proof adduced as to the defendant’s knowledge or understanding for intelligent waiver.
The opinion of the Chief Justice in the Miranda case requires that the warnings must be given prior to any interrogation and that there be express waiver. Further, the Chief Justice states (p. 479): “After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him.” Also, it is stated (p. 475): “If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel.” It is also stated (p. 475): “An express statement that the individual is willing to make a statement and does not want an attorney followed closely by a statement could constitute a waiver. But a valid waiver will not be presumed simply from the silence of the accused after -warnings are given or simply from the fact that a confession was in fact eventually obtained.”
In discussing the situation of successive police interrogations in case No. 761, Westover v. United States, the court said (in Miranda v. Arizona, 384 U. S. 436, 496, supra): “There is no evidence of any warning given prior to the FBI interrogation nor is there any evidence of an articulated waiver of rights after the FBI commenced their interrogation. The record simply shows that the defendant did in fact confess a short time after being turned over to the FBI following interrogation by local police. Despite the fact that the FBI agents gave warnings at the outset of their interview, from Westover’s point of view the warnings came at the end of the interrogation process. In these circumstances an intelligent waiver of constitutional rights cannot be assumed.”
In addition to the above quotations from the majority opinion (in Miranda, supra), all of the minority opinions indicate that, before interrogations begin, there must be affirmative waiver by the defendant where there is in custody interrogation of an accused. Mr. Justice Clark stated (p. 502): “Indeed even
in Escobedo [378 U. S. 478] the Court never hinted that an affirmative ‘ waiver ’ was a prerequisite to questioning; that the burden of proof as to waiver was on the prosecution; that the presence of counsel — absent a waiver — during interroga *271 tion was required; that a waiver can be withdrawn at the will of the accused; that counsel must be furnished during an accusatory stage to those unable to pay; nor that admissions and. exculpatory statements are ‘ confessions.’ ” Mr. Justice Harlan (p. 504) stated: “ To forego these rights, some affirmative statement of rejection is seemingly required, and threats, tricks, or cajolings to obtain this waiver are forbidden.” Mr. Justice White stated (p. 537): “As the Court declares that the accused may not be interrogated without counsel present, absent a waiver of the right to counsel ’ ’.
Under these circumstances the court finds there has been in this case a failure of proof beyond a reasonable doubt that the defendant has knowingly and intelligently waived his rights as to any of the admissions or the confession. People v. Huntley, 15 N Y 2d 72, 78.) With no prior articulation of waiver, the mere inclusion of words of waiver in the body of an exculpatory explanation amounting to a legal confession after four hours in almost continuous police custody fails to meet the requirements laid down in Miranda (supra). The admissions and confessions are excluded.