Alton CHARLES, Appellant,

v.

The STATE of Texas, Appellee.

No. 40608.

Court of Criminal Appeals of Texas.

Oct. 25, 1967.

On Rehearing Dec. 13, 1967.

Second Rehearing Denied Feb. 7, 1968.

R. P. Watson, Jr., Paul W. Anderson, Marshall, on appeal only, for appellant.

Charles A. Allen, Dist. Atty., Marshall, and Leon B. Douglas, State's Atty., Austin, for the State.

## OPINION

DICE, Judge.

The offense is murder; the punishment, death.

The deceased, Andrew Judge Roe, a sixty-six-year-old retired lake property caretaker and game warden, lived near Caddo Lake in Harrison County. On the morning of March 3, 1966, his dead body was found lying on a sidewalk at the rear of his home. He had been shot in the chest with a shotgun, and it was apparent he had been murdered.

In the investigation which ensued, the appellant, an eighteen-year-old Negro boy in the eleventh grade at school, was brought to the office of District Attorney Charles Allen on the morning of March 11, 1966, for interrogation. District Attorney Allen proceeded to talk to appellant and, at such time, advised him he was under investigation. Appellant was then taken before Justice of the Peace J. G. Stauts, who advised him of his rights prescribed by Art. 15.17 of the 1965 Code of Criminal Procedure, which included his right to retain counsel or request the appointment of counsel and the right to remain silent. Appellant was also advised of his right not to take a polygraph examination. At such time he consented to take a test.

No charges were filed against appellant and he was released.

On March 17, appellant voluntarily accompanied Officers Shivers and Little to Dallas for the purpose of taking a polygraph examination.

After the test was given, appellant gave a statement to District Attorney Allen in which he confessed to having killed the deceased on the night of March 2, 1965, by shooting him with a gun. Prior to making and signing the confession in Dallas, which was introduced in evidence, appellant was warned by the district attorney that he did not have to make a statement and that any statement he did make could be used in evidence against him.

Appellant was not, however, taken before a magistrate in Dallas and warned of his rights enumerated in Art. 15.17, supra.

The confession introduced in evidence by the state as state's exhibit #2, read, in part, as follows:

"I, Alton Charles, after first being duly warned by J. G. Stauts, who is the Justice of the Peace of Marshall, Texas, at 10:30 A_M., at Marshall, Texas_ on March 11, 1966, of the accusation against me and the affidavit, if any, filed in support of such accusation; that I have a right to retain counsel; that if I am unable to obtain counsel that I can request the appointment of counsel; that I have a right to an examining trial; that I am not required to make any statement at all and that any statement I do make may be used against me; and Charles A. Allen, the person to whom this statement is made, also warned me that I do not have to make any statement at all; that I have a right to consult with a lawyer; and that any statement made by me may be used in evidence against me in the trial or trials of the offense or offenses concerning which this statement is made, do hereby make the following voluntary statement: * * *."

Appellant objected to the confession on the ground that it had not been taken according to law and was in violation of the decisions of the Supreme Court of the United States in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799; Douglas v. People of State of California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811;

and Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977. He also objected on the ground that he had not been taken before a magistrate, as required by Art. 38.22, Vernon's Ann.C.C.P., and warned of his rights under Art. 15.17, supra.

Appellant's first ground of error is that the court erred in admitting the confession in evidence. It is appellant's contention that the confession was not legally obtained because he was not first taken before a magistrate in Dallas, pursuant to the provisions of Art. 38.22, V.A.C.C.P., and warned of his rights enumerated in Art. 15.17, supra.

Art. 38.22, supra, at the time appellant's written confession was made, provided in part as follows:

"When confession shall not be used

"(a) The confession shall not be admissible if the defendant was in jail or other place of confinement or in the custody of an officer at the time it was made, unless:

"1. It be shown to be the voluntary statement of the accused taken before an examining court in accordance with law, or

"2. It be made in writing and signed by the accused and shows that the accused has at some time prior to the making thereof received the warning provided in Article 15.17. It must further show the time, date, place, and name of the magistrate who administered the warning. It must further show that the person to whom the confession is made warned the accused: First, that he does not have to make any statement at all. Second, that any statement made by him may be used in evidence against him on his trial for the offense concerning which the confession is therein made * * *."

Art. 15.17, supra, at the time, provided:

"Duties of arresting officer and magistrate

"In each case enumerated in this Code, the person making the arrest shall im-

mediately take the person arrested before some magistrate of the county where the accused was arrested. The magistrate shall inform the person arrested of the accusation against him and of any affidavit filed therewith, of his right to retain counsel, of his right to request the appointment of counsel if he is unable to obtain counsel, and of his right to have an examining trial. He shall also inform the person arrested that he is not required to make a statement and that any statement made by him may be used against him. The magistrate shall allow the person arrested reasonable time and opportunity to consult counsel and shall admit the person arrested to bail if allowed by law."

The state concedes that appellant was not taken before a magistrate in Dallas on March 17 and warned of the rights enumerated in Art. 15.17 but insists that such was unnecessary in view of the fact that he was taken before a magistrate in Harrison County on March 11 and warned of his rights under Art. 15.17, supra.

We agree with the state's position.

Art. 38.22, supra, only requires that an accused receive the warning provided in Art. 15.17, supra, "at some time" prior to making the confession. This was complied with in the instant case, and the lapse of six days did not, under the circumstances, vitiate such warning.

Although appellant was not under arrest on March 11, he was the subject of investigation in the case and the warning was properly given him at that time.

No issue was raised by appellant as to the voluntary nature of the confession, and the requirement of Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, that the court make an independent finding on the issue before admitting the confession in evidence was not applicable. Ex parte Roper, Tex.Cr.App., 408 S.W.2d 929.

There is no evidence that appellant was in any manner denied the assistance of counsel during his interrogation and the making of his confession. The record affirmatively shows that he was advised of his right to remain silent and his right to counsel. Such is specifically recited in the confession which he executed and signed.

Under the record, we find that the confession was not obtained in violation of the rules prescribed by the Supreme Court in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, wherein the court summarized its holdings in Gideon v. Wainwright and Escobedo v. State of Illinois, and overrule the first ground of error.

Our holding that the confession was legally obtained, and no issue having been made as to the legality of his arrest, disposes of appellant's contention that the subsequent finding of the murder weapon and the introduction in evidence of photographs showing appellant's reenactment of the crime was in violation of the "fruits of the poisonous tree" doctrine discussed in Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441, and such contention is overruled. In this connection it should be pointed out that appellant made no such objection to the evidence when offered at the trial.

In his remaining ground of error, appellant insists that the court erred in refusing to grant a mistrial when reference was made to a polygraph test during the questioning of Ranger Elliott by the state.

The record reflects that, on redirect examination of the officer by the district attorney, the following transpired:

"Q. Do you know how many persons submitted to investigations in this case? A. Yes, sir. We had already carried two to Dallas for the purpose of polygraph tests.

"MR. WATSON: We object to the introduction of any polygraph test—

Judge, or the mention, and ask for a mistrial to be granted here for the reason it is not admissible for any purpose—

"THE COURT: I thought he was talking about the others.

"MR. WATSON: No, sir, he said that he carried two to Dallas for a polygraph test, and we object to the introduction or the statement of the polygraph test in this case, the injection of it into the case in any way.

"THE COURT: I will sustain the objection to that.

"MR. WATSON: And, we ask that a mistrial be granted in this case.

"THE COURT: I will overrule that motion.

"MR. WATSON: We feel, your Honor, that it is like carrying a skunk in here and telling the jury not to smell it, and it is impossible to cure it by that, and for that reason we are going to ask the court to grant us a new trial in this case, and declare a mistrial.

"THE COURT: I overrule your motion.

"MR. WATSON: Note our exception. I will ask the court then to instruct the jury not to consider a polygraph test or any other scientific test for any purpose whatsoever.

"THE COURT: You will not consider that statement that Mr. Elliott made about two people having taken the test in Dallas.

"MR. ALLEN: Two other people, your Honor.

"THE COURT: Two other people. Not the defendant.

"MR. ALLEN: No further questions."

■ From the record, it appears that the reference to taking a polygraph test related to other people and not the appellant. This would not constitute reversible error under the rule announced in Peterson v. State, 157 Tex.Cr.R. 255, 247 S.W.2d 110, 248 S.W.2d 130, cited by appellant. The ground of error is overruled.

The judgment is affirmed.

## DISSENTING OPINION

ONION, Judge.

Appellant's trial commenced on August 30, 1966, after the effective date (June 13, 1966) of the decision of the United States Supreme Court in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. See Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882. Therefore, in determining the admissibility of appellant's written statement we must consider not only whether state statutes have been complied with, but also whether the requirements of Miranda have been met. The majority opinion concludes that there was a substantial compliance with the state statutes in effect at the time.[1] Articles 15.17, 38.22, V.A.C.C.P.

Be that as it may, it is clear from the record before us that the requirements of Miranda were not met prior to the admission of appellant's statement.

Relating to custodial interrogation, the Supreme Court held in Miranda that an accused "prior to any questioning" must be given the following warnings which are now encompassed under the constitutional privilege against self-incrimination:

(1) That he has a right to remain silent.

1. It appears to be the State's position that appellant was not under arrest when taken before the magistrate in Harrison County; that he voluntarily accompanied the officers to Dallas; that only after the polygraph test indicated he was guilty was he arrested (without warrant) in Dallas County. If this be true, then the State and the majority overlook the provisions of Article 14.06, V.A.C.C.P., in effect at the time, which required that a person so arrested "shall" be taken "immediately" before a magistrate in the county of the arrest, who is required to perform the duties set out in Article 15.17, V.A.C.C.P. The record reflects that appellant was never taken before any magistrate in Dallas County.

(2) That any statement he does make *can and will* [2] be used as evidence against him in a court of law.

(3) That he has the right to consult with counsel before answering any questions.

(4) That he has the right to have counsel present with him during interrogation.

(5) That if he cannot afford an attorney, one will be appointed for him without cost, prior to the questioning, if he so desires.[3]

The Supreme Court made it plain that these warnings are an "absolute prerequisite" to any police interrogation and to the admissibility in evidence of any confession or statements made by the accused during the period of in-custody interrogation. Only if, after the giving of these Miranda warnings, the accused makes a "voluntary, knowing, and intelligent" waiver of his rights, may the police authorities initiate their interrogation.

Therefore, in any trials commencing after June 13, 1966, the prosecution has the burden of not only showing that all the proper Miranda warnings were given, but the burden also of initially coming forward and proving that after such warnings the accused effected a "voluntary, knowing, and intelligent" waiver of his rights. The Chief Justice stated in the majority opinion of Miranda: "But unless and until such warnings and waiver are demonstrated by the prosecution at the trial, no evidence obtained as a result of interrogation can be used against him."

In Miranda, the Chief Justice further wrote:

"This Court has always set high standards of proof for the waiver of constitu-

tional rights, Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), and we re-assert these standards as applied to in-custody interrogation. Since the State is responsible for establishing the isolated circumstances under which the interrogation takes place and has the only means of making available corroborated evidence of warnings given during incommunicado interrogation, the burden is rightly on its shoulders."

The opinion also states that "[i]f the interrogation continues without the presence of an attorney and a statement is taken, a *heavy burden* rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." (Emphasis supplied)

This perhaps expresses the traditional rule that the waiver of constitutional rights will not be "lightly inferred," and the courts will " 'indulge every reasonable presumption against [the] waiver' of fundamental constitutional rights." Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461. It appears that the "waiver" referred to may be defined as "an intentional relinquishment or abandonment of a known right or privilege." Johnson v. Zerbst, supra.

Miranda is not as explicit as it might have been regarding the issue of whether the accused, after receipt of the warnings, must make an express, affirmative statement of his intention to waive his rights in order to constitute an acceptable waiver.

The majority opinion in Miranda did say that: "[a]n express statement that the individual is willing to make a statement and does not want an attorney followed closely by a statement could constitute a waiver.

---

**2.** It is observed that Articles 15.17 and 38.22, supra, in effect at the time of appellant's statement as well as the recent amendments (Acts 1967, 60th Leg., R.S., Chapter 695, pp. 1732, 1736, 1740) thereto use the word "may" with regard to the warning as to the use of the statement in court.

**3.** Most of these required warnings are familiar to Texas procedure. See Articles 38.22, 15.17, V.A.C.C.P. and their forerunners. Many commentators and courts combine warnings (3) and (4) above, and refer to Miranda as requiring a four-fold warning.

But a valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained. A statement we made in Carnley v. Cochran, 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962), is applicable here:

> 'Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver.'

"See also Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). More-over, where in-custody interrogation is involved, there is no room for the contention that the privilege is waived if the individual answers some questions or gives some information on his own prior to invoking his right to remain silent when interrogated."

Further, the court said "[n]o effective waiver of the right to counsel during interrogation can be recognized unless specifically made after the warnings we here delineate have been given." This language would certainly appear to necessitate some proof that the accused affirmatively stated he desired to relinquish his rights.[4] The dissenting opinions of Mr. Justices Clark[5] and Harlan[6] indicate that this is what is required.

4. At the top of Miranda's statement was a typed paragraph stating that the confession was made *voluntarily*, without threats or promises of immunity and "with full knowledge of my legal rights, understanding any statement I make may be used against me." In rejecting the validity of the alleged "waiver" contained in Miranda's written statement, the Supreme Court held that "[t]he mere fact that he signed a statement which contained a typed-in clause stating that he had 'full knowledge' of his 'legal rights' does not approach the knowing and intelligent waiver required to relinquish constitutional rights." Miranda, 384 U.S. at p. 492, 86 S.Ct. at p. 1637, 16 L.Ed.2d at p. 734.

In People v. Keesler, 53 Misc.2d 268, 278 N.Y.S.2d 423, the court found that the Miranda warnings were clearly and succinctly stated, but that no *express* waiver was given until the statement was signed, nor was any proof adduced as to the defendant's knowledge or understanding for intelligent waiver. In concluding, under the circumstances, that there had been a failure of proof beyond a reasonable doubt that the defendant had knowingly and intelligently waived his rights as to any of the admissions or confessions, the Court stated: "With no prior articulation of waiver, the mere inclusion of words of waiver in the body of an exculpatory explanation amounting to a legal confession after four hours in almost continuous police custody fails to meet the requirements laid down in Miranda, supra." (Emphasis supplied)

See also George, B. James, Jr.: "Constitutional Limitations on Evidence in Criminal Cases." Institute of Continuing Legal Education, Ann Arbor, Mich., 1966, pp. 119, 120; Sobel, N.: "The New Confession Standards—Miranda v. Arizona." Gould Publications, Jamaica, N.Y., 1966, p. 75; George, B. James, Jr., Ed.: "A New Look at Confessions: Escobedo —The Second Round." Institute of Continuing Legal Education, Ann Arbor, Mich., 1967, p. 76; Thompson, J.: "Confessions: Required Warnings." Traffic Digest and Review, Traffic Institute, Northwestern University, November, 1966, p. 20; American Jurisprudence, Proof of Facts, Anno., Vol. 19, pp. 1, 42, 68 (Waiver of Rights Under Miranda Decision).

The Texas Legislature has recognized the requirements of Miranda in amending Articles 15.17 and 38.22, V.A.C.C.P. (Acts 1967, 60th Leg., R.S., Chapter 659, pp. 1732, 1736, 1740, effective August 28, 1967). The amendment to Article 38.22 (when oral and written confessions shall be used), supra, provides in part:
"The defendant must knowingly, intelligently, and voluntarily waive these rights prior to and during the making of the statement."

5. Miranda, 384 U.S. at p. 502, 86 S.Ct. at p. 1642, 16 L.Ed.2d at p. 739. "Indeed, even in Escobedo the Court never hinted that an affirmative 'waiver' was a prerequisite to questioning; that the burden of proof as to waiver was on the prosecution; that the presence of counsel —absent a waiver—during interrogation was required; that a waiver can be withdrawn at the will of the accused * * *"

6. Miranda, 384 U.S. at p. 504, 86 S.Ct. at p. 1643, 16 L.Ed.2d at p. 741. "To forgo

From the foregoing, as well as the record before us, it is clear that appellant was not given the full and complete Miranda warnings prior to the taking of his statement, nor has it been shown that the State has sustained its burden of showing an "affirmative" waiver.[7] Further, no proof was adduced as to the appellant's knowledge or understanding for an intelligent waiver. In all fairness to the law enforcement officers and the able district attorney, it should be noted that the confession was taken on March 17, 1966, several months prior to the Miranda decision.

While it appears that the appellant was given the warnings as set forth in Article 15.17, supra, six (6) days prior to the confession, as well as the warning required by Article 38.22 of the person to whom the confession was given,[8] it simply does not appear from this record that appellant was informed in connection with his right to retained or appointed counsel that this included the right to consult with counsel *prior to and during* any interrogation if he so desired. Further, there is no showing in the record that he affirmatively waived his right to counsel and his privilege against self-incrimination after his rights were fully explained. It is true that the appellant does not appear to have requested counsel, but where the assistance of counsel is a constitutional requisite to the protection of an accused's Fifth Amendment privilege in

the fact of interrogation, the right to be furnished counsel does not depend upon a request. Miranda, 384 U.S. 436, at p. 471, 86 S.Ct. 1602, at p. 1626, 16 L.Ed.2d at p. 722. See also Swenson v. Bosler, 386 U.S. 258, 87 S.Ct. 996, 18 L.Ed.2d 33.

The importance of the Miranda requirement, that an accused be informed of his rights (in "effective and express" terms) and thereafter "affirmatively" waive such rights in determining whether a statement is truly the product of a free choice is demonstrated by the facts in the case at bar. Here an indigent 18-year-old Negro high school student was "requested" to go to Dallas over 150 miles from his home at Karnack with two peace officers in a county patrol car. There in a strange city at the office of the Department of Public Safety this appellant who had no prior contact with police took a lie detector test. What he was told of the results of the test is not reflected by the record, but he was thereafter arrested. Subsequently the appellant, surrounded by law enforcement officers, without parents or friends, gave the statement now complained of. Two non-police officers witnessed the signing of the confession, one of whom testified and stated that he could not recall any warnings being given after his arrival. The exact length of the interrogation prior to confession does not appear in the record.[9] It is shown that the appellant and the officers were in Dallas

these rights, some affirmative statement of rejection is seemingly required, and threats, tricks, or cajolings to obtain this waiver are forbidden."

7. Neither the record nor the confession itself reflects that the appellant, after the warnings that were given, indicated in any way that he did not want a lawyer and decided to forgo his privilege against self-incrimination; that he understandingly rejected the offer with the knowledge of the potential ramifications and consequences of his decision. The fact the confession included a typed-in phrase that he was giving statement "voluntarily" is not sufficient in and of itself to constitute an affirmative waiver. Compare Footnote No. 4. For an excellent discussion of proof necessary for proof of an "affirma-

tive" waiver see "Waiver of Rights Under Miranda," American Jurisprudence, Proof of Facts, Vol. 19, p. 1.

8. While the statutory warning of former Article 727 (now Article 38.22, supra) appears to have been given by the district attorney, the person to whom the confession was given, some conflict in the testimony appears as to whether the district attorney advised the appellant in Dallas as to his right to counsel as reflected in the confession. This disputed issue was not resolved by the trial judge following the hearing on the voluntariness of appellant's statement.

9. "Whatever the testimony of the authorities as to waiver of rights by an accused, the fact of lengthy interrogation or in-

when the district attorney arrived from Austin between 9 and 10 a. m. prior to the polygraph test. Appellant's statement was given some time in the afternoon, the exact time not revealed. It is observed that the vital part of the prior warning given to appellant and relied upon by the State was orally imparted to appellant six (6) days earlier,[10] and given primarily to satisfy the regulation of the Texas Department of Public Safety as to the operation of polygraph tests. As earlier noted [11] the appellant was never taken before a magistrate in Dallas County following his arrest in violation of Article 14.06, V.A.C.C.P., nor does the record reflect that he was taken before a magistrate after his return to Harrison County.[11a]

Further, it is not shown that it was made clear to the appellant that the mere fact that he had taken a polygraph test or may have answered some questions or volunteered some statements did not deprive him of the right to refrain from answering any further inquiries until he had consulted with an attorney and thereafter consented to be questioned.[12]

The above-described facts readily demonstrate the similarity of the case at bar to the quartet of cases that comprise the Miranda decision. The record of the case at bar, like those of the "quartet," does not evince overt physical coercion or patent psychological ploys, but in this connection note that the Supreme Court said:

"In these cases, we might not find the defendants' statements to have been involuntary in traditional terms. Our concern for adequate safeguards to protect precious Fifth Amendment rights is, of course, not lessened in the slightest. In each of these cases, the defendant was thrust into an unfamiliar atmosphere and run through menacing police interrogation procedures. The potentiality for compulsion is forcefully apparent * * *" Miranda, 384 U.S. at p. 457, 86 S.Ct. at p. 1618, 16 L.Ed.2d at p. 713.

Under these circumstances, the Court said: "This atmosphere carries its own badge of intimidation."

The Miranda opinion made it plain that the interviewing agent must exercise his judgment in determining whether an individual waives his right to counsel, but the constitutional basis of that right makes the standard for waiver necessarily high. The

communicado incarceration before a statement is made is strong evidence that the accused did not validly waive his rights. In these circumstances the fact that the individual eventually made a statement is consistent with the conclusion that the compelling influence of the interrogation finally forced him to do so." Miranda, 384 U.S. at p. 476, 86 S.Ct. at p. 1629, 16 L.Ed.2d at p. 724.

It is also observed that the Supreme Court said:

"[A]ny evidence that the accused was threatened, tricked or cajoled into waiver will, of course, show that the defendant did not voluntarily waive his privilege. The requirement of warnings and waiver of rights is a fundamental with respect to the Fifth Amendment privilege and not simply a preliminary ritual to existing methods of interrogation." Miranda, 384 U.S. at p. 476, 86 S.Ct. at p. 1629, 16 L.Ed.2d at p. 725.

10. Note that in Miranda, 384 U.S at p. 469, 86 S.Ct. at p. 1625, 16 L.Ed.2d at

p. 720, the court said: "More important, whatever the background of the person interrogated a warning *at the time of the interrogation* is indispensable to overcome its pressures and to insure that the individual knows he is free to exercise the privilege *at that point in time*." (Emphasis supplied)

11. See Footnote No. 1.

11a. See Miranda, 384 U.S. at p. 463, 86 S.Ct. at p. 1622, 16 L.Ed.2d at p. 717. See also Miranda, Footnote No. 32.

12. Miranda makes it clear that the accused should be advised of his right to terminate the interrogation at any time, even if he has been fully warned and has affirmatively waived his rights. Note that the amendment to Article 15.17, V.A.C.C.P. (Acts 1967, 60th Leg., R.S., Chapter 659, pp. 1732, 1736 effective August 28, 1967) requires, among other things, that magistrate warn the accused of his right to terminate the interview at any time.

ultimate responsibility for resolving this constitutional question lies with the court. See Miranda, Footnote No. 55.

It may well be that there was a substantial compliance with the requirements of the Miranda decision, but it is not reflected in the record before us. It is obvious that the case at bar was not tried with the Miranda decision in mind. Upon a re-trial the proper warnings and waiver might well be demonstrated.

The harshness of the application of the Miranda decision to a case like the one at bar is apparent, but the Supreme Court's reasons for making it applicable to cases commencing after June 13, 1966, is fully set forth in Johnson v. State of New Jersey, supra.

In passing on the admissibility of a confession, it is as much the duty of this Court to protect the appellant's rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution as it is to protect his rights under our State Constitution. In this inquiry, this Court is bound by the interpretation placed upon the Federal Constitution by the Supreme Court of the United States.

From what has been said, it should be obvious that it is this writer's humble opinion that the Miranda decision requires that the case at bar should be reversed and remanded.

There is more however. It also appears to be appellant's contention that his Fourteenth Amendment rights to a fair trial were violated by the trial judge's failure to determine the voluntariness of his alleged confession prior to its admission into evidence before the jury, as required by Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908; Lopez v. State, Tex.Cr. App., 384 S.W.2d 345; Article 38.22, (b), V.A.C.C.P.

After the selection of the jury and prior to the reading of the indictment, a hearing was held to determine the voluntariness and admissibility of appellant's statement. At the conclusion of the hearing, the court merely stated "I am going to overrule your motion, let the record so show, to suppress the introduction of this voluntary statement, alleged voluntary statement." Appellant's objection to introduction of the confession before the jury was likewise overruled. Thereafter the court failed to enter a written order stating his findings as required by the mandatory provisions of Article 38.22, (b), supra, in effect at the time. It is not clear if the trial judge decided voluntariness, one way or the other, or if he did, what standard was relied upon. Compare Boles v. Stevenson, 379 U.S. 43, 85 S.Ct. 174, 13 L.Ed.2d 109. There was certainly no clear cut and reliable determination of the voluntariness of the confession.

In Lopez v. State, supra, this Court, taking heed of Jackson v. Denno, supra, stated:

"In new trials arising hereunder and in future trials in this state where there is a fair question of voluntariness of a confession of the defendant, the trial judge shall grant to the defendant the opportunity to object to the use of said confession; shall grant a fair hearing before the Court on the issue of voluntariness, and from all of the evidence and without regard to the truth or falsity of the confession, shall make a clear cut determination of the voluntariness of the confession, including the resolution of disputed facts upon which the voluntariness issue may depend. Upon request, such hearing shall be held and the court's ruling made in the absence of the jury. Unless the trial judge is satisfied that the confession was voluntarily made he shall exclude it. If the confession has been found to have been voluntarily made and held admissible by the Court, it is recommended that the trial judge enter an order stating his findings, which order should be filed among the papers of the cause but not exhibited to the jury."

Section (b), Article 38.22, supra, wrote into statutory laws the holdings of Lopez and Jackson. Now see Article 38.22, Sec-

tion 2, V.A.C.C.P. (Acts 1967, 60th Leg., R.S., Chapter 569, p. 1732, 1741, effective August 28, 1967).

Even in absence of the statute the court's action did not comply with the rule of Jackson v. Denno, that the trial court's conclusion, as to voluntariness, must, at least, appear from the record with unmistakable clarity. See Sims v. State of Georgia, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593.[13]

For the reasons stated above, I cannot agree with the conclusions in the majority opinion that the requirements of Miranda have been met, or that express findings were not required as there was no issue of voluntariness raised.

I respectfully dissent.

## DISSENTING OPINION

MORRISON, Judge.

I join in that portion of my brother Onion's dissent in which he concludes that the requirements of the holding of the Supreme Court of the United States in Miranda v. State of Arizona, supra, have not been met.

## OPINION
## ON APPELLANT'S MOTION
## FOR REHEARING

WOODLEY, Presiding Judge.

Appellant's motion for rehearing urges that we set aside this conviction on the ground that the requirements of Miranda v. State of Arizona, supra, were not met.

As we understand the holding of the Supreme Court in Miranda, the specific warnings referred to in Judge Onion's dissenting opinion must be employed "unless other fully effective means are devised to inform

accused persons of their right of silence and to assure a continuous opportunity to exercise it".

The Supreme Court stated its holding in Miranda in the following words:

"Our holding will be spelled out with some specificity in the pages which follow but briefly stated it is this: the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. As for the procedural safeguards to be employed, *unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it*, the following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him. The mere fact that he may have answered some questions or volunteered some statements on his own does

13. Normally, the failure of the trial court's findings as to voluntariness to appear in the record with unmistakable clarity does not necessarily require a new trial but rather a hearing as provided by Jackson v. Denno, 378 U.S. at pp. 393–396, 84 S.

Ct. 1774, 12 L.Ed.2d 908. See Sims v. State of Georgia, supra. In the case at bar, however, there was also a violation of a state statute. (Article 38.22(b) V.A. C.C.P.)

not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned."

■ The view of the majority is that the Texas Statutes quoted in Judge Dice's opinion, enacted after and under the impact of the Supreme Court's opinion in Escobedo v. State of Illinois, supra, supply such effective means and the facts in this case, which are undisputed, reflect that such means were employed.

Even lawyers specializing in the defense of criminal cases who greeted the Miranda decision with such exclamations as "Isn't it wonderful," would not agree to exchange the Texas Statutes for others providing only the protection of the rights of an accused afforded by the due process clause of the Constitution of the United States.

The statutes quoted in Judge Dice's opinion required two warnings, one by the magistrate and another by the person to whom the confession is made. The confession must be reduced to writing and signed and the written confession must show that both warnings had been given.

The undisputed facts of this case furnish further support for our conclusion that appellant was not deprived of his constitutional right to the assistance of counsel during his interrogation.

Appellant cooperated with the officers conducting the search for the person that shot Judge Roe, "with the exception, of course, that he was not telling the truth" about his activities on the evening in question.

After having been advised of his right to obtain counsel and, if unable to obtain counsel, to request the appointment of counsel and he had consented to take a polygraph test, appellant was not in custody for several days.

Before he signed the written confession he was again warned of his rights as required by the Texas Statutes and he read aloud the written confession which showed the warnings quoted in Judge Dice's opinion. His attention was in this way again directed to his right to counsel after he had orally confessed.

The Texas Statutes, but not the due process clause of the Constitution, required that the written confession showing the warning be signed by appellant, an exception being that in connection with said confession he made "statement of facts or circumstances that are found to be true, which conduce to establish his guilt, such as the finding of secreted or stolen property, or the instrument with which he states the offense was committed * * *." (Art. 38.22(a) 3, C.C.P.1965)

The testimony introduced by the state without objection shows that after appellant made and signed the confession he was taken by the officers to the scene of the crime and to the home of appellant (both of which, interestingly, were in the town or community of "Uncertain" in a wooded area on the banks of Caddo Lake, in deep East Texas, and within sight of the caretaker's house where the shot was heard and a searchlight was promptly used in an attempt to ascertain who fired it.)

Appellant's father was called as a defense witness and on cross-examination testified without objection:

"Q. You were present at home in bed on the night of March 17th this year, when Alton, the Sheriff and myself and others came to your house, weren't you?

"A. Yes, sir.

"Q. What did Alton say to you and your wife about killing Judge Roe?

"A. After you all brought him home, we asked where was Alton, and Mr. Shivers, I think, told my wife that he was outside, and she asked him if there was anything wrong with him, he said 'no, there wasn't nothing wrong with him, he was just in a

little trouble,' and she wanted to see him, and he brought him in, and they told him to tell his mother what he had did.

"Q. He told your wife that he killed Judge Roe, didn't he?

"A. Yes, sir, sho' did.

"Q. And, did he get the gun out of the closet and give it to the Sheriff?

"A. Yes, sir.

"Q. Did you ask him why in the World he did such a thing?

"A. Yes, sir, sho' did.

    \*     \*     \*     \*     \*     \*

"Q. That gun right there, was that in your house on March 17th?

"A. Yes, sir.

"Q. Is that the gun that Alton got out of the closet and gave the Sheriff, and told the Sheriff that was the one he killed Judge Roe with?

"A. Yes, sir."

■ The judges of this court are fully aware of their duty to protect the rights of the accused and of the binding effect of new concepts of due process announced by the Supreme Court of the United States. Ex parte Young, Tex.Cr.App., 418 S.W.2d 824.

To set aside this conviction and lay the blame on Miranda v. State of Arizona, supra, would give no effect to its language: "unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, \* \* \*"; would expand the new concept of the meaning of due process announced by the Supreme Court after appellant confessed that he was the one who shot Judge Roe, and do so by an opinion which is not subject to review by the Supreme Court.

We remain convinced that appellant was not denied any constitutional right and that

the court did not err in admitting in evidence his voluntary confession.

As to Jackson v. Denno, supra, we point out that at the hearing on the admissibility of the confession the witnesses were called and examined by appellant's counsel in support of his contention that appellant should have been taken before a magistrate and "re-warned" in Dallas because the warning given him by the magistrate in Marshall was not "after arrest" and he was not arrested until he was interrogated in Dallas.

We further point out that there was no material disputed fact issue as to the admissibility of the confession, appellant's contention being that the confession showing the warnings given was "void on its face."

Also we point out that this court has not held that the provision of Art. 38.22(b) V.A.C.C.P. (1965), which provided that the court enter an order stating his findings, was mandatory and we decline to so hold. In any event, such is not required by Jackson v. Denno, supra.

When this death penalty conviction joins a score and more of others affirmed by this court which are now pending in the federal courts, we have utmost faith that the rights of appellant as well as the rights of society will be protected and the Supreme Court, in doing so, will not fail to take into consideration the fact that the Texas Statutes afford even greater procedural safeguards than those required by any of its decisions construing the due process clause of the Constitution of the United States.

Appellant's motion for rehearing is overruled.

### DISSENTING OPINION ON APPELLANT'S MOTION FOR RE-HEARING

ONION, Judge.

The majority simply refuses to come to grips with the fact that this record does not reflect that appellant affirmatively waived

his rights and his privilege against self-incrimination prior to his statement. Repeated warnings, even though fully complying with the Miranda decision, are of no avail unless the State goes further and shows a "voluntary, knowing, and intelligent" waiver.

In its original opinion the majority with absolutely no mention of the waiver requirements of Miranda said: "Under the record, we find that the confession was not obtained in violation of the rules prescribed by the Supreme Court in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694, wherein the Court summarized its holdings in Gideon v. Wainwright and Escobedo v. Illinois, and overrule the first ground of error."

In its opinion on re-hearing, no reference is made to the above statement.

The majority appears to shift its position and again, without any discussion of waiver, places its reliance upon other means "fully effective" as the Miranda requirements.

Even a casual reading of the Texas statutes referred to demonstrate that such statutes do not come up to the standard of the Miranda warnings and are, therefore, not as fully effective. This is, of course, without regard to the additional and essential requirement of an affirmative waiver. Such Texas statutes in effect at the time of appellant's statement did not require any waiver. How such Texas statutes, in effect at the time of the appellant's statement, afford even greater procedural safeguards than any United States Supreme Court decision construing the due process clauses of the Federal Constitution as claimed by the majority is beyond the comprehension of this writer.

What the majority still fails to grasp, the Legislature was quick to realize. The Legislature recognized that the statutes in effect at the time of appellant's statement, enlightened as they may have been when enacted, did not meet the requirements of the Miranda decision, nor were as fully effective. The 1967 amendments to Articles 15.17 and 38.22, V.A.C.C.P., provide for warnings comparable to Miranda and Article 38.22, supra, now includes the requirements of a waiver.

In attempting to sustain their original position, the majority points out an admission of guilt offered by the appellant himself. It is apparent they overlook the holding of the United States Supreme Court in Haynes v. State of Washington, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513, where the Court said:

"In reaching the conclusion which we do, we are not unmindful of substantial independent evidence tending to demonstrate the guilt of the petitioner. As was said in Rogers v. Richmond, 365 U.S. 534, 541, 81 S.Ct. 735, 740, 5 L.Ed.2d 760, [766]:

" 'Indeed, in many of the cases in which the command of the Due Process Clause has compelled us to reverse state convictions involving the use of confessions obtained by impermissible methods, independent corroborating evidence left little doubt of the truth of what the defendant had confessed. Despite such verification, confessions were found to be the product of constitutionally impermissible methods in their inducement.'

"Of course, we neither express nor suggest a view with regard to the ultimate guilt or innocence of the petitioner here; that is for a jury to decide on a new trial free of constitutional infirmity, which the State is at liberty to order."

Further, in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, the Court said:

"It is now axiomatic that a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession, Rogers v. Rich-

mond, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed. 2d 760, and even though there is ample evidence aside from the confession to support the conviction. Malinski v. People of State of New York, 324 U.S. 401, 65 S.Ct. 781, 89 L.Ed. 1029; Stroble v. State of California, 343 U.S. 181, 72 S.Ct. 599, 96 L.Ed. 872; Payne v. State of Arkansas, 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975."

As to Jackson v. Denno, supra, the majority makes the assertion without any reasoning that the provisions of Article 38.22, (b), V.A.C.C.P., 1965 (now Article 38.22, Section 2), which requires the court to enter an order stating his findings after a hearing on the admissibility of the confession, is not mandatory. The history and the very wording of the statute itself clearly indicate otherwise.[1] Even if there was no statute at all, Jackson v. Denno, supra, requires that the trial court's conclusion must appear from the record with unmistakable clarity. See Sims v. State of Georgia, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593. The Supreme Court of Georgia took the position the majority now takes and found a bottomless pit.

It appears further that the majority feels that this death penalty conviction should not be set aside by this Court because to do so would deprive the United States Supreme Court of an opportunity to review this conviction and the effectiveness of the Texas statutes now since repealed as a substitute for the Miranda requirements.

Since there is no such automatic review, let us hope that this indigent appellant will have available to him the funds to give the Court on the Potomac that opportunity.

For the reasons stated, and more particularly the reasons set out in my original dissenting opinion, I vigorously but respectfully dissent to the overruling of appellant's motion for re-hearing.

MORRISON, J., joins in this dissent.

---

[1]. Article 38.22(b), V.A.C.C.P.1965, in effect at the time of appellant's trial, reads: "If the confession or statement has been found to have been voluntarily made and held admissible as a matter of law and fact by the court in a hearing in the absence of the jury, he *shall* enter an order stating his findings which shall be filed among the papers of the cause but not exhibited to the jury. *Only there-* *after* may evidence pertaining to such matter be submitted to the jury and it shall be instructed that unless the jury believes beyond a reasonable doubt that such confession or statement was voluntarily made, the jury shall not consider such statement or confession for any purpose nor any evidence obtained as a result thereof." (Emphasis supplied)