

Mitchell Esper, El Paso (on appeal only), for appellant.

Barton Boling, Dist. Atty., James H. Kreimeyer, Asst. Dist. Atty., El Paso, and Leon B. Douglas, State's Atty., Austin, for the State.

**Hilario Rodriguez TORRES, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 40888.**

Court of Criminal Appeals of Texas.

Jan. 10, 1968.

OPINION

WOODLEY, Presiding Judge.

The offense is burglary; the punishment, 12 years.

The indictment alleged burglary of a house occupied and controlled by Roy A. Vannoy on or about March 26, 1966.

The state's evidence reflects that Mr. Vannoy was nightwatchman and, as such, in custody and control of the building and

all property of the White House Department Store in El Paso while on duty.

He came on duty at 1 A.M. on March 26, 1966, and shortly thereafter checked the store and found it completely secured. He checked the store again, starting on the third floor, at 2:30 A.M. and found that the cash registers had been broken into. He immediately went to the first floor and to the front of the building and called the police. While waiting for the police he saw a person wearing a small black hat and a dark three-quarter length coat in front of the elevators on the main floor.

A short time later appellant was brought to the store by one of the officers and Mr. Vannoy testified: "This time he still had on a small hat and a black short coat, a three-quarters coat."

Upon further investigation it was discovered that cash registers on the mezzanine and the fourth floor had been broken into, a desk on the fifth floor had been rifled; and a window, outside of which was a fire escape leading to the McCoy Hotel, had been broken.

Jesse Ramirez, one of the police officers who responded to the call, saw appellant running and pursued him in the patrol car and then on foot; apprehended him as he got inside the Paso del Norte Hotel, and despite his resistance, took him into custody.

After appellant was returned to the White House Department Store he was searched and in excess of $500.00 in American money; more than one hundred pesos in Mexican money, and "White House Script" printed by the White House Department Store and given to customers as a cash credit for a returned article, were taken from his pockets.

The state's testimony further reflects that 19 of the drawers of the cash registers each contained $40.00 in cash and $10.00 in Script, totalling $950.00. $188.24 in cash and $190.00 in Script was found on the floor and in the broken drawers after the burglary.

The state offered in evidence the written confession of the defendant and the court, after hearing evidence as to its voluntariness and admissibility, entered an order finding:

"That the said confession was made after statutory warning having been given the Defendant by Justice of the Peace Ben Mejia, Precinct No. 8, of El Paso County, Texas, and Detective Armando Nava of the El Paso Police Department, the person to whom the confession was given, and the Court further finds that said confession was freely and voluntarily given by the Defendant and the Defendant was not induced or caused by any person to give such statement by threats, persuasion, compulsion, intimidation, violence, promises, unlawful detention or anything else other than the free and voluntary act of the Defendant;

"That the said confession was signed by the Defendant after being translated from English to Spanish by Sgt. Ignacio Garcia of the El Paso Police Department and that thereafter it was voluntarily signed by the Defendant and the said confession is held admissible as a matter of law and fact by the Court after a hearing in the absence of the jury.

"It is further ORDERED, ADJUDGED and DECREED that the Defendant's objection to the admission of such confession is hereby overruled."

Appellant's second ground of error is that the purported confession obtained from him was inadmissible and its admission in evidence constitutes reversible error.

In support of such contention appellant refers to his testimony to the effect that he was forced to sign the confession by various officers of the El Paso Police Department; that he was not given the proper and required warnings and that at the

time of his giving the confession he was in an intoxicated condition and had not slept for quite some time.

All of this testimony was refuted by the testimony of police officers.

Citing Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, decided after the confession was made but before the trial at which it was admitted in evidence, appellant contends in part:

"In the present case, there is no testimony whatsoever that the Appellant was advised of his rights to counsel during said interrogations, and therefore, the Appellant's rights guaranteed by the Fifth Amendment to the United States Constitution were clearly and wilfully violated.

"It cannot be argued that the Appellant's silence or failure to ask for a lawyer during the interrogation constitutes a waiver of this requirement. * * "

The record of the hearing before the court on the voluntariness and admissibility of the confession reflects that the following warning was given appellant as shown in the written confession made after it was given.

"El Paso Police Department, El Paso, Texas, Date: March 26, 1966; Time Commenced, 9:15 A.M.; Time Completed, 10:00 A.M.

"I, Hilario Rodriguez Torres, after being duly warned by Ben Mejia, Judge, who is the Justice of the Peace, Precinct 8 of El Paso County, Texas, at 4:28 A.M., at Judge Ben Mejia's office on March 26, 1966, of the accusation against me and the affidavit, if any, filed in support of such accusation, that I have a right to retain counsel, that if I am unable to obtain counsel that I can request the appointment of counsel, that I have a right to an examining trial, that I am not required to make any statement at all and that any statement I do make may be used against me; and Detective Armando Nava, the person to whom this statement is made, also warned me that I do not have to make any statement at all, and that any statement made by me may be used in evidence against me in the trial or trials of the offense or offenses concerning which this statement is made, do hereby make the following voluntary statement. I have also been advised by the person taking this statement of my right to consult an attorney before making this statement, but I do not wish to do so." Initials, "H.R.T."

The confession having been admitted in evidence and read to the jury, the issues raised by the evidence adduced before the jury as to its voluntariness were submitted to the jury.

■ We overrule the contention that the warning given appellant was insufficient or that procedural safeguards effective to secure appellant's privilege against self incrimination were not used.

■ Our holding that the confession was properly admitted in evidence disposes of appellant's remaining ground of error which relates to the sufficiency of the evidence to identify appellant as the burglar.

The judgment is affirmed.

## CONCURRING OPINION

ONION, Judge.

I concur in the results reached by the majority, but feel compelled to express my own views since the majority has not discussed or mentioned the essential "waiver" requirement of Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694, as to the right to counsel and the

privilege against self-incrimination.[1]  See discussion of such "waiver" requirement in this writer's dissent in Charles v. State, (No. 40,608—not yet reported).

Even though the confession was taken on March 26, 1966, Miranda v. Arizona, supra, is applicable as the trial in the case at bar commenced after June 13, 1966. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882.

In trials commencing after June 13, 1966, as the case at bar (Oct. 12, 1966), the prosecution, prior to the introduction of a statement resulting from custodial interrogation, has the burden of not only showing that the Miranda warnings were given, but the burden also of initially coming forward and proving that after such warnings the accused effected a "voluntary, knowing and intelligent" waiver of his rights.  The Chief Justice stated in the majority opinion of Miranda: "But unless and until such warnings *and waiver* are demonstrated by the prosecution at the trial, no evidence obtained as a result of interrogation can be used against him."  (emphasis supplied)

It appears that the "waiver" referred to may be defined as "an intentional relinquishment or abandonment of a known right or privilege."  Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed.2d 1461.

Even though it can be concluded that the warnings given the appellant were comparable to the Miranda warnings, or were at least as effective in apprising the appellant of his right to silence and in assuring a continuous opportunity to exercise it, we must consider whether "waiver" is reflected by the record before us.  Such waiver cannot be presumed from a silent record.

It is observed in the appellant's confession the following appears: "I, Hilario

Rodriguez Torres, * * * do hereby make the following voluntary statement. I have also been advised by the person taking this statement of my right to consult an attorney before making this statement, but I do not wish to do so."  Initials "H.R.T."

Such statement in the confession is a factor to be considered in determining if the accused affirmatively stated he desired to relinquish and waive his rights, but it is not determinative thereof.

At the top of Miranda's statement was a typed paragraph stating that the confession was made *voluntarily,* without threats or promises of immunity and "with full knowledge of my legal rights, understanding any statement I make may be used against me." In rejecting the validity of the alleged "waiver" contained in Miranda's written statement, the Supreme Court held that "[t]he mere fact that he signed a statement which contained a typed-in clause stating that he had 'full knowledge' of his 'legal rights' does not approach the knowing and intelligent waiver required to relinquish constitutional rights." Miranda v. State of Arizona, 384 U.S. at p. 492, 86 S.Ct. at p. 1637, 16 L.Ed.2d at p. 734. (emphasis supplied)  See also People v. Keesler, 53 Misc.2d 268, 278 N.Y.S.2d 423; Charles v. State (dissenting opinion), supra.

While Miranda was not as explicit as it might have been regarding what constitutes an acceptable waiver, the majority opinion did say: "An express statement that the individual is willing to make a statement and does not want an attorney followed closely by a statement could constitute a waiver.  But a valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained."

---

1.  It is observed that effective August 28, 1967, Article 38.22, Vernon's Ann.C.C.P., was amended to provide: "The defendant must knowingly, intelligently, and voluntarily waive these rights prior to and during the making of the statement." Acts 1967, 60th Leg., Ch. 659, Sec. 23, p. 1740.

At the time of the confession the appellant was a 25-year-old Mexican national, reared near the United States border, who had prior experience with the police. He had been twice previously convicted of burglary in El Paso County and each time committed to the Texas Department of Corrections. It appears he was also convicted in the United States District Court on an immigration violation. Shortly after his arrest the appellant was taken at approximately 4:28 a. m. before Judge Mejia who gave him the warning required by Article 15.17, V.A.C.C.P., then in effect. Such warning was given to the appellant in Spanish since he did not appear to speak the English language. Testifying in his own behalf at the hearing on the voluntariness and admissibility of his statement, appellant acknowledged that he had received such warning.

After the magistrate's warning the appellant was taken to the city jail where he remained in a cell until 9:15 a. m. when Detective Nava began his interrogation of the appellant in Spanish. After determining from the appellant that he had been taken before a magistrate and given the warning required by Article 15.17, supra, Officer Nava then gave such warning again as well as the warning required by Article 38.22, V.A.C.C.P., then in effect, and also informed the appellant of his right to consult with an attorney *before making any statement*. Nava related that thereafter appellant stated he did not want an attorney. In order to clearly indicate that he had been properly warned and advised of his right to counsel and understood such rights and was free to exercise his rights and privileges at that time Nava requested the appellant to initial the portion of his statement relating to such warnings, which he did. It further appears that during the taking of the statement appellant corrected the Officer's spelling of his street address in Juarez.

After the completion of the statement and before appellant signed the same, Detective Ignacio L. Garcia was called in to interpret the statement to him in the Spanish language. Officer Garcia testified that he explained to appellant the warnings contained in the statement and his right to counsel and appellant stated that he understood the same. As to the body of the confession Garcia related that he carefully went over each word with the appellant to insure that the Spanish he was using did not differ from the Spanish of appellant's locale (Juarez) and that he understood the same. Thereafter the confession was signed in the presence of Nava, Garcia and two other witnesses.

The interrogation and the taking of the statement was completed within 45 minutes. After the warnings were given appellant expressly stated he did not want an attorney and understood the warnings and this was closely followed by his written statement under the circumstances here described. The record reflects that the warnings were given at the time of the interrogation and appellant was aware that he was free to exercise his rights and privilege against self-incrimination at that point in time. There is no showing of lengthy interrogation or incommunicado incarceration which would mitigate against the finding of a valid waiver.

Appellant's testimony as to the involuntariness of his confession was contradicted by the testimony of other witnesses and the trial judge's findings following the conclusion of the hearing on the admissibility and voluntariness of the confession is supported by the evidence.

Nothing therein would support a finding that this appellant was threatened, tricked or cajoled into a waiver.

Being satisfied that the State has discharged its burden of proof and that the evidence demonstrates a clear-cut affirmative waiver as required by Miranda, I concur. Judge MORRISON joins me in this concurrence.