**James McCANDLESS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 40917.**

Court of Criminal Appeals of Texas.

Feb. 28, 1968.

Rehearing Denied April 10, 1968.

Paul W. Anderson, Reagan Huffman, Marshall, for appellant.

Leon B. Douglas, State's Atty., Austin, for the State.

## OPINION

ONION, Judge.

The offense is Murder with Malice; the punishment, assessed by the jury, life.

The indictment charged the appellant with the murder of his wife, Geraldine, on July 29, 1966, by drowning her in water (in a well).

At the outset appellant challenges the admissibility of both his oral and written confessions. It is his contention that neither confession meets the standards required by Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, applicable since the trial commenced on February 14, 1967, long after the effective date of such decision (June 13, 1966). See Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882; Evans v. United States, 375 F.2d 355 (8th Cir); Fendley v. United States, 384 F.2d 923 (5th Cir).

It will therefore be necessary for us to examine the facts at some length.

N. F. Shivers, a deputy sheriff of Harrison County, testified that on July 30, 1966, at 6:30 a. m. he received a call that the deceased was missing, and went immediatly to the home of Charlie Hayner, an 85-year-old invalid by whom Mrs. McCandless was employed as nurse-maid, and where she lived for six days each week. Upon arrival Shivers found Mr. Hayner's daughters and the appellant (who did not live there) present. He discovered that the deceased's bed was bloody and there were signs of a struggle; that her suitcase and other possessions were missing, with the exceptions of her glasses, Bible and one dress belt. While there he learned from Mrs. Wyatt Moore, one of Mr. Hayner's daughters, that the appellant and the deceased had been having marital difficulties and that two weeks before appellant had tried to choke the deceased "to death."

Appellant was then requested to meet Shivers at the courthouse in Marshall, whereupon they went to the District Attorney's office. There appellant was informed that he was under investigation and his consent to take a polygraph test was obtained. Observing abrasions on the appellant's ear and hand and what appeared to be dried blood on his fingernails, Shivers gave appellant a "pretty good manicure" following their return to the Sheriff's office. At some time while the appellant was in the courthouse, Shivers made an inspection of the tires on appellant's station wagon parked nearby. At approximately the time appellant left the courthouse, Deputy Sheriff Shivers related that he received a call that the body of a woman had been found in a water well of a church near Leigh, Texas.

The District Attorney, Shivers, and other officers went immediately to the scene where Shivers assisted in removing the body from the well. While there Shivers observed nearby tire tracks identical to those of appellant's station wagon and took pictures thereof.

Thereafter it appears that the District Attorney radioed ahead to certain police officers. At approximately high noon a City of Marshall policeman arrived at appellant's house and informed him that the District Attorney was on his way and that appellant was to "stay here." The officer remained outside the house in his patrol car until the arrival of the District Attorney. Upon arrival the District Attorney walked through appellant's house looking around and then he and a deputy sheriff carried appellant to the Sullivan's Funeral Home where appellant identified the body of a woman taken from the well as his wife. Following such identification the District Attorney took appellant and an employee of the funeral home into an

ante-room, where appellant, after being told again that he was under investigation, orally stated that he had killed his wife and had burned her belongings in another part of the county from where he had left her body in the well.

The District Attorney testified that thereafter he called officers from the courthouse who came to the funeral home and arrested appellant. At such time appellant then led the officers to an isolated spot where they recovered a burned portion of a suitcase, etc.

Appellant was booked into the county jail at 3:14 p.. m. on Saturday, July 30, 1966. It appears at 8:40 a. m. on Sunday, July 31, 1966, that the appellant was taken before J. G. Stauts, a Justice of the Peace in Harrison County. Thereafter it appears a written confession was obtained from the appellant by the District Attorney.

In answer to appellant's claim that the oral confession was inadmissible it is the state's theory that the appellant was not under arrest or subjected to custodial interrogation at the time of his oral statement, or if he was, the requirements of Article 38.22, Vernon's Ann.C.C.P. as to oral confession have been satisfied.

We need not, however, decide the question for we observe that it was the appellant, not the state, who elicited evidence as to the oral confession in the presence of the jury. No error is perceived.

We now turn our attention to the admissibility of the written statement.

The warning portion of appellant's rather lengthy statement dated July 31, 1966, in which he admitted placing his wife in the well after choking her, reads:

"I, James McCandless, after being duly warned by Charles A. Allen, the person to whom this statement is made, that I have a right to retain a lawyer, which I hereby waive, that I do not have to make any statement at all and that any

statement made by me may be used in evidence against me on my trial for the offense concerning which the confession is made, do hereby make the following free and voluntary statement:

"On July 31, 1966, at 8:40 o'clock a. m. I was taken before J. G. Stauts, a magistrate, at Marshall, Harrison County, Texas. At that time, such magistrate informed me of the accusation against me together with all affidavits filed with such accusation; he also advised me of my right to retain counsel, of my right to request the appointment of counsel if I was unable to obtain counsel, of my right to an examining trial, and that I was not required to make any statement and that any statement made by me may be used against me on my trial for the offense concerning which the statement is made.. The magistrate also allowed me a reasonable time and opportunity to consult counsel."

In addition, the testimony offered supports the fact that prior to giving the confession the appellant was taken before Judge Stauts, who gave him the warning required by Article 15.17, V.A.C.C.P., and that thereafter the District Attorney, the person to whom the confession was given, gave appellant the warning required of such person by Article 38.22, V.A.C.C.P.

The majority of this Court held in Charles v. State, 424 S.W.2d 909, the warnings required by these two statutes in effect at the time of appellant's arrest and trial were as "fully effective" as the warnings. required by Miranda v. State of Arizona, supra, and satisfied the holding of Miranda. See this writer's dissent in Charles v. State, supra.

There is more in the case at bar however. The District Attorney testified that after the magistrate's warning he also warned the appellant as to his right to either retained or appointed counsel as well as his privilege against self-incrimination. While the testimony relative to the right to counsel warning does not reflect the ex-

press statement that this meant counsel prior to interrogation, there is certainly no claim that it was limited to mean counsel after he got to court. See Fendley v. United States, 384 F.2d 923.

■ Being satisfied that the warnings given meet the requirements of Miranda, we must now consider the question of waiver as also required by that decision.

■ Miranda, of course, teaches that a heavy burden rests upon the prosecution to prove that a person in custody "knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." 384 U.S. at 475, 86 S.Ct. at 1628.

In United States v. Hayes, 385 F.2d 375, the Fourth Circuit Court of Appeals stated:

"In reiterating the strong presumption against waiver and the high standards of proof needed to overcome this presumption, the Court in *Miranda* relied upon Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), in which the Court unequivocally stated:

" 'The determination of whether here has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'

"Johnson v. Zerbst, supra, 304 U.S. at 464, 58 S.Ct. at 1023. Similarly, in a post-*Miranda* decision, the Fifth Circuit observed:

" ' * * * the cases in which it is clear that the warnings have been given must be considered on their own facts in order to determine the question of waiver. The courts must do this on an *ad hoc* basis, since no *per se* rule has thus far been adopted dealing with this problem.'

"Narro v. United States, 5 Cir., 370 F.2d 329–330 (1966)."

While Miranda was not as explicit as it might have been regarding what constitutes an acceptable waiver, the majority opinion did say:

"An express statement that an individual is willing to make a statement and does not want an attorney followed closely by a statement could constitute a waiver. But a valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained."

We turn now to an examination of the facts and circumstances of the case at bar to determine if they sufficiently demonstrate a "knowing and voluntary" waiver.

While it is difficult to determine from the record whether the District Attorney, who was the state's principal and only witness as to the written confession, was testifying or making a statement to the court, he did state he was present when the magistrate gave his warnings and that thereafter in the magistrate's presence the appellant waived his right to an attorney.

It is observed in the appellant's written statement that he expressly waived his right to *retained* counsel and stated that after the warnings given he was making a free and voluntary statement.

■ Such statements in a confession are factors to be considered in determining if the accused affirmatively waived his rights, but it is not determinative thereof. See this writer's concurring opinion in Torres v. State, Tex.Cr.App., 422 S.W.2d 741.

"Just as the mere signing of a boilerplate statement to the effect that a defendant is knowingly waiving his rights will not discharge the government's burden, so the mere absence of such a statement will not preclude as a matter of law the possibility of an effective waiver." United States v. Hayer, 385 F.2d 375.

■■ While there is no written waiver as to the right to appointed counsel, we observe that at the time of his arrest it was

shown that appellant was employed and owned a 1963 Chevrolet station wagon and no claim is made that appellant was indigent at that time, though some six months later the court did appoint him counsel. See Footnote 43, Miranda. In State v. Gray, 268 N.C. 69, 150 S.E.2d 1, it was held that inasmuch as there was nothing to show that the defendant was indigent at the time of his arrest and interrogation, the failure of the police officers to advise him of the right of an indigent to have counsel appointed did not violate the defendant's constitutional rights against self-incrimination and would not render any statements he made to officers inadmissible.[1] See also Commonwealth v. Wilbur, 2 Cr.L.R. 2271.

■ Likewise, it would logically follow that if an accused not shown to be indigent at the time, is fully warned as to his rights to the appointment of counsel if destitute, but informed as well of his right to appointed counsel if he "was unable to obtain counsel," then the failure to show a waiver of his right to appointed counsel does not deprive him of his constitutional rights or render any statement made inadmissible.

At the time of the confession the appellant was a 55-year-old man with a high school education who had taken a business course by correspondence. While it appears he followed the construction trade as a carpenter most of his adult life, the record shows he also worked as a motel manager in various parts of the United States. It further appears that before appellant signed the statement in the presence of five witnesses, he made and initialed nineteen corrections on said statement. While appellant could not recall making the statement, it is noted that while testifying on the motion to suppress as to the corrections made on the written statement he pointed out to the District Attorney that he was a better speller than the prosecutor.

We find nothing in the record that would support a finding that this appellant was threatened, tricked, or cajoled into a waiver. There does not appear to be any question of physical or psychological coercion. While the exact length of the interrogation is not shown, the record supports the conclusion that it was concluded Sunday morning, July 31, 1966, following the double set of warnings. There is further no showing of incommunicado incarceration which would mitigate against the finding of a valid waiver.

■ While the "waiver" was not here demonstrated by the prosecution in the most effective or desirable manner, we feel when the "totality of the circumstances" are considered the evidence is sufficient to show that the state has discharged its burden and the appellant made a constitutionally permissible waiver as required by Miranda.

The trial judge overruled the motion to suppress and found the written confession voluntary. Thereafter the issues as to the voluntariness of both confessions were submitted to the jury in the court's charge.

Appellant's first ground of error is overruled.

■ Appellant's ground of error as to the failure of the trial court to grant his special requested charges are not before this Court for review, for there is no showing that such charges were presented in writing to the court prior to the reading of the charge to the jury. See Article 36.15, V.A.C.C.P.

Attention is directed to the recent decision of this Court in Smith v. State, 415 S.W.2d 206, holding that Articles 36.14 and 36.15, V.A.C.C.P., control over the provisions of Article 40.09, Sec. 4, V.A.C.C.P., concerning the effect of the certification of a transcription of the court reporter's notes as to objections, etc.

[1]. The expedient, however, of giving the warning as to appointed counsel and obtaining an affirmative waiver is too simple and the rights involved too important to engage in ex post facto inquiries into financial ability when there is any doubt at all on that score.

Appellant next complains that he was deprived of his federal constitutional right to a trial by a fair and impartial jury because the trial court failed to grant his motion to quash the jury after its selection on the ground that all twelve jurors had no conscientious scruples against the infliction of the death penalty. No testimony was adduced on the motion, and the voir dire examination of the jury panel was not brought forward in the record. There is therefore no showing that the jurors selected were qualified on the death penalty. This ground of error is not before us for review. Even if there had been a showing that the jurors were so qualified, no error would have been presented. Article 35.16(b), Sec. 1, V.A.C.C.P.; Ellison v. State, Tex.Cr.App., 419 S.W.2d 849; Crain v. State, Tex.Cr.App., 394 S.W.2d 165. See also Bingham v. State, 163 Tex. Cr.R. 352, 290 S.W.2d 915; cert. den. 352 U.S. 858, 77 S.Ct. 79, 1 L.Ed.2d 64; Enriquez v. State, Tex.Cr.App., — S.W.2d — (Feb. 14, 1968).

The judgment is affirmed.