Narciso Joseph SANTIAGO, Appellant,

v.

The STATE of Texas, Appellee.

No. 42193.

Court of Criminal Appeals of Texas.

Sept. 22, 1969.

George T. Thomas, Big Spring, for appellant.

Wayne Burns, Dist. Atty., Big Spring, and Jim B. Vollers, State's Atty., Austin, for the State.

## OPINION

ONION, Judge.

The offense is assault with intent to murder with malice aforethought; the punishment, 10 years' confinement in the Texas Department of Corrections.

The record reflects that shortly before 10 p. m. on April 25, 1966, Sgt. M. T. Gore, United States Air Force, left the N.C.O. Club at Webb Air Force Base, near Big Spring, Texas, to escort Jean Morton, an employee of the club, home in his automobile.

Approximately 100 yards outside the main gate of the base Mrs. Morton saw the appellant, whom she did not know, rise up out of the back seat of the car with a pistol in his hand. She screamed. Gore began to grapple with the appellant. A fusillade of shots was fired killing Gore. Appellant then looked at Mrs. Morton and fired. The bullet entered her right forearm and lodged under the scalp in her temple. Simultaneously with the shooting the car nosed into a traffic directional sign and came to a stop. The appellant fled from

the car. At the scene police found spent .32 caliber automatic shells and tracks indicating the assailant had gone over the fence into the Air Force Base.

The first four grounds of error relate to the State being permitted to ask a certain question of the appellant at the penalty stage of the bifurcated trial. The appellant did not testify at the guilt stage of the proceedings but took the stand at the hearing on punishment in connection with his application for probation. On cross-examination he was asked the following question:

"Q. Because I want to be sure you understand. I will start over. And if you don't understand you can stop me and say I don't understand or back up. But I don't want you to answer until you understand. Are you at this time sorry or do you have any regret that on April 25th of 1966, in the Count_ of Howard and State of Texas, that you took a .32 caliber automatic pistol out to the N.C.O. Club located on Webb Air Force Base in Big Spring, and hid yourself in the back of Sgt. M. T. Gore's car and laid in wait until Jean Morton and Sgt. M. T. Gore came to the car, got into the front seat of the car, started to drive the car out of the Base out through the main gate of Webb, at which time you raised up in the back, pointed a pistol at them, and upon your being discovered in the car you started and commenced to fire from the pistol several shots, being at least five or six; and a result thereof you fired a bullet into the arm and head of Jean Morton, causing her to spend approximately nine days in a local hospital in Big Spring? That is the end of my question. Do you understand it?"

Appellant objected to the question on the ground that his answer would be incriminating since the indictment charging the murder of Gore was still pending against him. The objection was overruled, but in view of the objection the State withdrew the question. Without seeking an instruction to the jury to disregard the unanswered question, appellant moved for a mistrial claiming he was prejudiced since he had been forced to object in the jury's presence on the ground of self incrimination. The motion for mistrial was overruled.

In Allaben v. State, Tex.Cr.App., 418 S. W.2d 517, this court said:

"Evidence to be offered at the hearing on punishment pursuant to the provisions of Article 37.07, Section 2(b), Vernon's Ann.C.C.P. is by no means limited to the defendant's prior criminal record, his general reputation and his character. Evidence legally admissible to mitigate punishment or evidence that is relevant to the application for probation, if any, is also admissible."

When an appellant voluntarily takes the witness stand at the hearing on punishment, he is on for all purposes of that hearing and subject to the same rules as any other witness. He may be contradicted, impeached, discredited, attacked, sustained, bolstered up, cross examined as new matter, etc., except where the law forbids certain matters to be used against him.

As earlier observed, the appellant had filed an application for probation.

We conclude that it was entirely proper for the State to inquire of the appellant if he regretted having committed the offense with which he was charged and had already been found guilty by the jury. In this connection the trial court did not err in denying appellant's motion in limine as to such question.

If, under the circumstances, the question as framed was improper no error is perceived. The question was withdrawn and

never answered. The appellant did not seek relief by requesting a jury instruction, nor did he request the jury to be removed before making his objection on the basis of self incrimination. The court did not err in overruling the mistrial motion.

The record does not support appellant's claim that the State repeatedly asked the complained of question. Only one earlier attempt to inquire along these lines was made and it was interrupted by an objection which was overruled.

Grounds of error #1, #2, #3 and #4 are overruled.

In his last three grounds of error appellant contends the court erred in denying his motion to suppress the testimony of the State's witness Gerchak since it was the fruit of the poisonous tree of the illegal interrogation of the appellant. He particularly complains of Gerchak's testimony relating to the appellant hiding his clothes in Gerchak's barracks room following the alleged offense.

The morning following the shooting a written confession was taken from the appellant. Near the end of such statement he admitted that, after the shooting, he went to Gerchak's barracks building, met Gerchak, hid his muddy clothes and changed into some of Gerchak's clothes. At the time such information was unknown to the law enforcement officials.

Following a separate hearing the court ruled this pre-Miranda (Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694) confession inadmissible at appellant's trial which commenced on February 20, 1967, after the effective date of Miranda. See Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882. Cf. Jenkins v. Delaware, 395 U.S. 213, 89 S.Ct. 1677, 23 L.Ed.2d 253. The court merely ruled the confession inadmissible. There were no findings of fact or conclusions of

law. The record does not reveal the basis of its ruling. Appellant advances such ruling as the basis for his "poisonous tree" claim.

First, we cannot agree that the confession was inadmissible and that there were fruits of the poisonous tree.

■ State officers went to the Air Force Base the morning following the shooting while conducting a general investigation into an unsolved crime. They did not have the name of a suspect. Other than an offense had occurred, .32 caliber pistol hulls had been found and tracks of the assailant had led into the air base, they had little to go on.[1] They had learned that an airman named Joe had been seen talking to Mrs. Gore at her place of employment and that an unidentified airman had been seen briefly the evening before in the N. C. O. Club of which he was not a member. When the investigation began to focus upon the accused as a suspect, the State officers gave him warnings in accordance with Article 38.22, Vernon's Ann.C.C.P. (then in effect) and summoned a magistrate. The appellant was asked if he desired a lawyer, a member of his family, a priest, etc. He requested to see a Father Holland. When it was discovered Father Holland was out of town he declined the offer to see another priest. He was then warned in accordance with the terms of Article 31 of the Military Code and told military personnel who administered the warnings he understood his rights. The magistrate arrived and gave the warnings then required by Article 15.17, V.A.C.C.P. The appellant stated to the magistrate he understood his rights. One of the State officers, a district attorney investigator, then undertook to explain to the appellant in layman's language the magistrate's warnings. Thereafter such officer read to the appellant the warnings required by Article 38.22, V.A.C.C.P. (then in effect) from a confession form. The appellant then indicated his willingness to give a written statement

1. Mrs. Morton became hysterical after the shooting and was unable to give the officers at that time an adequate description of her assailant.

,which was compiled and signed within approximately 45 minutes by the 20-year-old married appellant who quit high school 5 months prior to graduation and who had served in the Air Force for almost 4 years.

In Charles v. State, 424 S.W.2d 909, cert. denied, 392 U.S. 940, 88 S.Ct. 2319, 20 L. Ed.2d 1401 (in which this writer and Judge Morrison dissented) the majority of this court held that warnings under Articles 15.17 and 38.22, V.A.C.C.P., 1965, were as "fully effective" as the Miranda warnings. The case at bar is much stronger factually than Charles, and unlike Charles, there is clear evidence of waiver, particularly when the totality of the circumstances is considered. McCandless v. State, Tex. Cr.App., 425 S.W.2d 636; Hill v. State, 429 S.W.2d 481; Gonzales v. State, Tex. Cr.App., 429 S.W.2d 882.

If the confession, which was not introduced, was admissible as it appears, there can be no fruits of the poisonous tree.

If we be wrong and there was a valid reason for excluding the confession, then we still conclude no error is shown. The record reflects that after the shooting the appellant went to Gerchak's barracks building where he met Gerchak and both entered the pool room of that building where a number of airmen were playing pool. Appellant was still in his own clothing which were somewhat muddy. They returned to the same pool room after the appellant had changed into Gerchak's over-sized clothes. Later they were together at a public restaurant and later adjourned to an all night party with several couples. At the time Gerchak had no knowledge that the offense had been committed.

Even appellant's counsel admitted that in the normal course of investigation the police would have discovered the existence of Gerchak as a witness. Under the circumstances, it is clear that the testimony of Gerchak would have been obtained regardless by means sufficiently distinguishable from the underlying illegality to

be purged of the primary taint. See Wong Sun v. United States, 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441. The locating of the witness would not have remained unknown "but for" the confession. Wong Sun v. United States, supra. See also Maguire, How to Unpoison the Fruit—the Fourth Amendment and the Exclusionary Rule, 55 The Journal of Criminal Law, Criminology, and Police Science, 307 (1964).

Grounds of error #5, #6 and #7 are overruled.

The judgment is affirmed.