**Guadalupe Ortiz SANCHEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 42561.

Court of Criminal Appeals of Texas.

March 11, 1970.

Rehearing Denied June 10, 1970.

Gary Norton, Corpus Christi, for appellant.

William B. Mobley, Dist. Atty., and Douglas Tinker, Asst. Dist. Atty., Corpus Christi, and Jim D. Vollers, State's Atty., Austin, for the State.

OPINION

MORRISON, Judge.

The offense is murder; the punishment death.

In his first three grounds of error, appellant asserts that he was not properly

warned of his right to counsel, and his right to terminate questioning as set forth in Miranda v. Arizona, 384 U.S. 426, 86 S. Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974.

Appellant was arrested, and his confession taken on May 4, 1966, before the decision in Miranda, supra, which was effective as of June 13, 1966, Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L. Ed.2d 882. Appellant's trial began on April 10, 1967.

The record reflects that appellant was repeatedly warned of his rights in accordance with Article 15.17, Vernon's Ann.C.C.P.,[1] and Article 38.22, V.A.C.C.P.,[2] then in effect.

Appellant was taken into custody on May 3, 1966, after Police Officers had accosted him while investigating reports of a prowler. Appellant was immediately taken to the Police Station, where he was warned by Justice of the Peace Armando Flores who had been asked via police radio to meet the arresting officers with the appellant. After consenting to taking a polygraph examination, appellant was taken to Justice of the Peace Peter Dunne where he was twice warned of his rights prior to the actual taking of the polygraph examination. Appellant was then warned five times by the polygraph operator, Henry Canty. Among these was the warning administered by Canty which was printed on the confession form on which appellant dictated and signed his confession. A review of these warnings is as follows. Justice of the Peace Flores testified:

"A. Briefly * * *, I informed Mr. Sanchez concerning the fact that he was accused of burglary, and also investigation of assault with intent to murder, and I told him of his rights as a citizen in this community and the country, that he could see his lawyer, that he was entitled to bail, he was entitled to bond, he could have an examining trial, and

if he wished to make a statement concerning this thing, it could be, if he made a statement, and if he gave it as a written statement, it might be, it would be used against him."

"Q. And you were careful to warn him of each item which is identified as State's Exhibit No. 5?"

"A. Yes, sir."

Justice of the Peace Dunne testified:

"Q. And what is that document (State's Exhibit No. 6) and what does it contain?"

"A. It shows that on May the 4th, at 8:37 a. m., I informed Guadalupe Sanchez that he was accused of burglary and attempted murder, and I told him of his rights that he had at that time."

"Q. And those rights, the warnings which you gave were contained in that document?"

"A. That he has the *right to an examining trial, the right of bail, if any, of his right to the advice of a lawyer, if he is unable to obtain a lawyer, that his rights, of his rights to obtain counsel that he did not have* to make any statement at all, and any statement by him may be used against him in any court of law."

The polygraph operator, Canty, testified that he warned appellant at 9:15 a. m., on May 4th, 1966:

"A. I gave him generally the contents of this thing, (State's Exhibit No. 9) to the effect that he did not have to make any statement, or he had a right to remain silent, he had a right to an attorney, and he understood all of this from the Judge, and he acknowledged this to me."

---

1. Chapter 722, Acts of the 59th Legislature, 1965.

2. Chapter 722, Acts of the 59th Legislature, 1965.

\* \* \* \* \* \*

"A. I examined him and asked him if he understood that he had a right to discuss this with an attorney or anybody that he wanted to \* \* \* and he said he understood that, *and he said he didn't need an attorney* \* \* \*"

\* \* \* \* \* \*

"A. *I told him that he did not have to talk to me if he didn't want to talk to me;* if he wanted to talk to me, all right, and if he wanted to talk to anybody else that was all right, too, *if he wanted to stop talking at any time, that was all right too;* it was up to him, *whenever he wanted to stop,* or if he wanted to continue, it would be fine. I also advised him that he had a right to an Attorney, I asked him if he understood that and he said he did. *I asked if he wanted one, and he said he didn't need one.*"

Appellant also signed a release to take the polygraph examination. Thereafter, appellant dictated and signed a written confession which was introduced as State's Exhibit No. 10. Canty, who took the confession, testified further:

"Q. And after it was typed up, were you present or did you see whether or not Mr. Sanchez read that statement?"

"A. We read it together, sir."

\* \* \* \* \* \*

"Q. Did you read the warning which is contained at the top again?"

"A. From the top all the way down."

\* \* \* \* \* \*

"Q. Mr. Canty, at any time during your conversation with Guadalupe Ortiz Sanchez, *did he ever request an Attorney to be brought in to represent him?*"

"A. *No, sir.*"

"Q. *Did he actually affirmatively say he did not want a* \* \* \*"

"A. \* \* \* *On several occasions, yes.*"

\* \* \* \* \* \*

"Q. Can you tell from those starting times exactly what time this man was warned by, by you of his rights as you understand them to be?"

"A. Yes, sir."

"Q. What time did you start out, from the first time you warned him?"

"A. The first time was at 9:37 a. m."

"Q. What is the second time this man was warned?"

"A. At 10:37 a. m."

"Q. What was the third time this man was warned?"

"A. 11:32 a. m."

"Q. And the next time?"

"A. 1:46 p. m."

"Q. What was the next time?"

"A. At about 2:15 when this document was taken here, (State's Exhibit No. 10) 2:15 or 2:30."

\* \* \* \* \* \*

"Q. Okay, and prior to this giving this consent, as is set out in exhibit no. 8, did you warn him as is set out in the top of that exhibit?"

"A. Yes, sir."

In addition to the above warnings, appellant's confession was corroborated by the fact that teeth marks found upon deceased's body were made by the appellant. Appellant did not testify or offer any evidence challenging the voluntariness of the confession.

The repeated warnings and the evidence presented sustain the view that under the "totality of the circumstances" surrounding this case, a full and intelligent waiver of

appellant's right to have an attorney present during questioning was shown, and he was informed that he could terminate questioning at any time,[3] McCandless v. State, Tex.Cr.App., 425 S.W.2d 636; Hernandez v. State, Tex.Cr.App., 425 S.W.2d 653; Anders v. State, Tex.Cr.App., 426 S.W.2d 228; Santiago v. State, Tex.Cr.App., 444 S.W.2d 758; Torres v. State, Tex.Cr.App., 422 S.W.2d 741; Gonzales v. State, Tex.Cr.App., 429 S.W.2d 882; Narro v. United States, 370 F.2d 329 (5th Cir.); and Easley v. State, Tex.Cr.App., 448 S.W.2d 490.

■ In his grounds of error numbers four (4) and five (5), appellant contends that he was not warned that he was suspected of the offense of murder with malice aforethought, and that death could be a possible punishment. Appellant was not arrested for murder. He was informed that he was under arrest for burglary, attempted murder, and investigation of assault with intent to murder. Appellant's culpability as to murder did not become apparent until some time later. The indictment charging appellant with murder was returned May 23, 1966, counsel was appointed the same day, and the trial did not commence until April 10, 1967. We believe this case comes under the holding in Elliott v. State, Tex.

Cr.App., 444 S.W.2d 914, where this Court said:

"The fact that appellant was informed that he had been accused of the offense of 'attempted kidnapping and attempted rape,' rather than 'the offense he was to be charged with committing,' did not render the confession inadmissible."

■ Appellant's grounds of error 6, 7, 8, 9, 10, 12, and 13 challenge the validity of Article 1.14, V.A.C.C.P., and the infliction of the death penalty. Article 1.14, V.A.C.C.P., merely puts a defendant on notice that the death penalty will be sought by the state. The death penalty as a punishment for murder in Texas has long been upheld. These contentions are without merit.[4]

■ Appellant's ground of error number 11 questions the excusing of certain veniremen because of their views concerning the death penalty. We conclude after careful examination of this record which consists of some 1099 pages of voir dire examination, as set forth therein, that the court did not run afoul of the standards set out in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776.[5]

3. State's Exhibits Numbers 5 and 6 were forms signed by the respective Justices of the Peace, Flores and Dunne, to the effect that they administered the following warnings to the appellant: " * * * of his right to an examining trial; of his right to bail, if any; of his right to the advice of a lawyer, and if he were unable to hire a lawyer of his right to request appointment of counsel; that he did not have to make any statement at all and that any statement he makes may be used against him in any court of law."
State's Exhibit Number 7 was the warning given appellant on a form used before appellant took a polygraph examination. "The warnings are the same as set out above except with the additions that, ' * * * his right not to be required to make any statement or take a polygraph examination and that any statement made by him might be used against him.' *I further informed him*

*that he would be granted a reasonable time and opportunity to consult with counsel if he desired."*
State's Exhibits Numbers 8 and 10 were the confession forms signed by appellant which also contained warnings that were essentially the same as recited, supra.

4. Appellant's reliance on the decision in Alford v. North Carolina, 405 F.2d 340, (4th Cir.), is unfounded. In the case at bar, there was a plea of not guilty, and it was nowhere established that appellant's confession was coerced because of fear of the death penalty.

5. See also, Boulden v. Holman, 394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed.2d 433; Pittman v. State, Tex.Cr.App., 434 S.W.2d 352; Scott v. State, Tex.Cr.App., 434 S.W.2d 678; Quintana v. State, Tex.Cr.App., 441 S.W.2d 191.

Appellant's grounds of error numbers 14 through 16 assert that appellant should have been allowed to examine the state's files with regard to the investigation of this case to determine the identity of a suspect who had neither admitted nor denied that he had committed the offense in question. One of the investigating officers testified that the state had questioned "hundreds" of people in connection with this offense, and that he could not remember the person about whom appellant was inquiring. Upon examination of the files, such a person was discovered and it was shown that the State dismissed this person as a suspect. Upon review of this testimony, we reach the same conclusion, and that they were correct in so doing. The name and address of this person was disclosed to appellant during this testimony.

In grounds of error numbers 17 and 18, appellant contends that any privileged information claimed by the state in these files was waived, because the contents of these files were disclosed to a news reporter. Upon examination of the oral deposition of this reporter, such contention is not supported by the facts.

Grounds of error numbers 14 through 18 are overruled.

Finding no reversible error, the judgment is affirmed.

WOODLEY, Presiding Judge (concurring).

The disposition of appellant's ground of error which complains that he was not properly warned of his rights as set forth in Miranda v. Arizona, supra, though repeatedly warned of his rights in accordance with Arts. 15.17 and 38.22 C.C.P. (1965), is controlled by Charles v. State, Tex.Cr. App., 424 S.W.2d 909, cert. denied, 392 U.S. 940, 88 S.Ct. 2319, 20 L.Ed.2d 1401.

It is again pointed out that the opinion in Miranda sets out procedural safeguards and measures required "unless we are shown other procedures which are at least as ef-fective in apprising accused persons of their right of silence and in assuring a continuous opportunity to exercise it."

As we held in Charles v. State, supra, the Texas Statutes, Arts. 38.22 and 15.17, supra, enacted after and under the impact of the Supreme Court's opinion in Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed. 2d 977, supply such effective means and more.