Victor **MILLER**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 43740.

Court of Criminal Appeals of Texas.

June 16, 1971.

Rehearing Denied July 28, 1971.

Will Gray, Houston, for appellant.

Carol S. Vance, Dist. Atty., Phyllis Bell and Ted Busch, Asst. Dist. Attys., Houston, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ODOM, Judge.

This appeal is from a conviction for the offense of murder with malice. The punishment was assessed by the jury at life.

The record reflects that appellant, in company with Eugene DeLeon, an employee of a service station in Pasadena, was working on his car during the evening of November 6, 1965; that the deceased entered the service station around midnight and asked to use the telephone. After completing her call, she walked back to her car and "was laying on the seat" when DeLeon, who testified that he "thought she was drunk," approached her and "told her to leave," as he was preparing to close the service station. DeLeon further testified that deceased told him "that she wasn't well and she couldn't drive and she wanted somebody to drive her home." Appellant then told DeLeon that he would take the woman home, and left the service station driving deceased's car. The following morning, deceased's body was found in the back seat of her automobile in a pasture; she had been choked and beaten to death. Approximately seven months later, appellant was apprehended by Dallas authorities and returned to Harris County for trial.

Appellant presents twenty-one grounds of error, all of which pertain to the admissibility of his confessions; timely appointment of counsel; constitutional warnings; and waiver of constitutional rights. In view of the questions presented and the particular circumstances of this case, we deem it necessary to set out in detail the facts surrounding the arrest, and subsequent confessions which directly deal with appellant's first fifteen grounds of error.

The record reflects that appellant was arrested in Dallas County at his place of employment on June 6, 1966, under authority of a warrant for arrest based upon an indictment out of Harris County charging him with the offense of murder. Immediately thereafter, he was taken before a magistrate; he was not questioned at this time. The magistrate, Judge Friedlander, testified as follows:

"Q. Did you advise him why he was in custody?

"A. Yes. I told him he was being held for investigation of a murder out of Harris County.

"Q. What else did you advise him, other than what he was charged with?

"A. Well, I told him that he had a right to an attorney; that our detectives would permit him to call an attorney here or that he could call an attorney when he got back to Houston or that he could request the appointment of an attorney when he got to Harris County, if he was unable to get his own attorney. I told him that he was not required to make any statement; that if he did make a statement, that statement could be used against him if the case went to trial.

\* \* \* \* \* \*

"THE COURT: Did you advise him if he didn't have a lawyer, that you would appoint one?

"THE WITNESS: Yes, sir, that is what I answered when the District Attorney first asked me.

"THE COURT: I didn't understand that.

"THE WITNESS: I told him that he had a right to an attorney; *that we would permit him to phone an attorney in Dallas;* or if he wanted to wait to come back to Harris County, that he could get one here; or if he was unable to get his own attorney, he could request the appointment of an attorney when he came back to Harris County.

"THE COURT: Well, did you advise him whether you would appoint an attorney then?

"THE WITNESS: I did not advise him that I would appoint an attorney for him. He didn't request an attorney at the time.

"THE COURT: He didn't request one. You told him that he could have an attorney when he got back to Houston?

"THE WITNESS: Right. Or I told him that he could use the telephone right there and call one.

\* \* \* \* \* \*

"THE COURT: You told him that he could use the phone and call an attorney?

"THE WITNESS: Right. Or call someone to get an attorney for him. At the end of this, I always ask them if there are any questions. And I don't recall him making any request or asking any questions about it.

"THE COURT: Did you advise him that he had a right to remain silent?

"THE WITNESS: Right. I told him that if he made any statement, it could be used against him, of any kind.

\* \* \* \* \* \*

"THE COURT: You did advise him that if he made a statement, it could be used against him?

"THE WITNESS: That is right."

Judge Friedlander, on cross-examination by defense counsel, again testified:

"Q. Tell me exactly how you advised him of his right to counsel?

"A. *I told him that he had a right to an attorney; that he could call an attorney at that time;* that the detectives would permit him to call an attorney; or that if he wanted to wait until he got back to Harris County, he could call in Harris County; or he request the appointment of a lawyer when he got back to Harris County." (Emphasis supplied)

The record further reveals that after the aforementioned warnings were given appellant [1] he was placed in jail to await the arrival of Harris County authorities. Two Deputy Sheriffs arrived around midnight the same day, and upon meeting appellant they again warned him of his constitutional rights as evidenced from the record:

"Q. Did you give him a warning?

"A. It was read.

"Q. Who read it?

"A. I did.

"Q. And what warning did you give him, Mr. Cleboski?

"A. It was the warning that we call the warning upon arrest. It was a printed card that had been issued to us. \* \* \* For substance, it was that he didn't have to say

---

1. He made no claim of indigency at this time.

anything; he had the right to a lawyer; he could remain silent; if he made a statement it could be used against him and probably would be used against him."

After appellant was warned of his rights the second time by the two Houston deputies, he left Dallas in company with the officers for Houston approximately "1:00 A.M." En route to Houston, after stopping to eat at a cafe, the appellant "discussed the case then." He and the deputies arrived in Houston "around 4:00 A.M." on June 7th, 1966. Later that same morning, he led the officers to where he had hidden a pill box belonging to deceased and retrieved this object himself, which was found "inside of a junk yard * * * inside of a door and up in the rafters of the shop." See Article 38.22(e) Vernon's Ann.C.C.P.

Appellant later made statements to the press, after signing a written note that "he would freely talk to the newspapers and all news media." Subsequently a full written confession was made after a warning was given.

The trial court held an exhaustive independent hearing on the voluntariness of the written confession and filed findings of fact and conclusions of law to the effect that appellant was afforded all of his rights pursuant to Article 15.17, V.A.C.C.P., and in compliance with the standards enunciated in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908. However, we conclude that this case hinges on the adequacy of the Dallas warning. See Wong Sun v. United States 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441.

 We are squarely confronted with the issue of whether or not appellant, under the circumstances presented by this case, was entitled to appointed counsel during the six hour time period he spent awaiting transfer to Houston. We hold first of all that he was not; and secondly, even if he was, such right was effectively, intelligent-ly, and knowledgeably waived. As previously pointed out, appellant was clearly apprised of his right to call a lawyer in Dallas and of his right to have an attorney appointed in Houston. Secondly, he made no request whatsoever to contact a lawyer, either retained or appointed. Thirdly, he underwent no interrogation as reflected by the record, and was asked no questions until he began volunteering information en route to Houston. In this context, the record reflects the following testimony by one of the two deputies to whom oral incriminations were made:

"Q. During the drive down from Dallas, did you discuss the case or any details with the defendant?

"A. (By Officer Cleboski) Yes. We stopped and ate at a small town outside of Dallas. And then, after we left the cafe, we discussed the case then."

On cross-examination, Officer Cleboski further testified:

"Well, for a while it was very little conversation. And then, they (Officer Irby and appellant) got to talking. And Miller, Mr. Miller, started just talking about the murder and the whole story."

Complaint is made that evidence of oral admissions which occurred at this time was in violation of Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246, and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. These arguments are misplaced. In Massiah, supra, the incriminating statements were secured as a result of surreptitious eavesdropping by officers who implanted a radio transmitter in the appellant's car, while he was on bail. Such a situation is clearly not evident in the case at bar. Furthermore, we do not have a problem such as that which occurred in Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, where Escobedo, while undergoing constant interrogation, was repeatedly denied an opportunity to consult counsel.

In Miranda v. Arizona, supra, the Supreme Court stated:

"Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning."

In the case at bar, appellant was clearly warned of all afore-mentioned rights; he did not indicate in any way that he desired counsel, and the record repeatedly evidences the fact that he waived his right to counsel voluntarily, knowingly, and intelligently.

Furthermore, the record is completely void of any indication of coercion, either physical or psychological, and none is alleged. See Phelper v. Decker, 401 F.2d 232 (5th Cir.). The Supreme Court of the United States has held that the constitution does not require that an accused have a lawyer before he may waive a constitutional right. Adams v. United States ex rel. McCann, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268. See also Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461; Narro v. United States (5th Cir.) 1966, 370 F.2d 329, cert. denied, 1967, 387 U.S. 946, 87 S.Ct. 2081, 18 L.Ed.2d 1334; United States v. Venere (5th Cir., 1969) 416 F.2d 144.

The Fifth Circuit recently reaffirmed this position in Gilpin v. United States, 415 F.2d 638. In Gilpin, supra, a case where the factual situation was similar to the one at bar, the court reversed because the accused was given his constitutional warnings under conditions less than ideal. The court stated:

"Gilpin had only a sixth grade education. He signed the waiver and made his statement the morning after he was arrested for drunkenness. Apparently his mental faculties were not functioning fully the 'morning after' since he confused the date of the mail robbery with the date he was in jail."

In the case at bar, appellant had received a twelfth grade education, and was under neither the influence of intoxicants nor drugs. Furthermore, the record lends credence to Officer Cleboski's testimony that appellant "just started talking." Witness DeLeon testified that he saw appellant the day after the alleged murder and that:

"* * * He told me about some murder that he apparently committed or something about it. I didn't pay much attention to it, because I didn't believe him.

"Q. He was always saying things like that?

"A. Yes, he was. Well, not saying that he murdered people, but, I mean, other things that would not be true."

The witness stated that he also recalled hearing appellant tell a man who "was running a wrecking yard" about the killing.

Del Monte Whitehurst testified that on November 7, 1965, at approximately 8:30 A.M. the appellant telephoned him and asked to be picked up, and then the following is revealed in the record:

"Q. (By the State's Attorney) At the time that you talked to him, did he say anything else, other than he wanted you to pick him up?

"A. Well, he thought he was in some trouble.

"Q. All right. Did he elaborate, did he say anything further about what trouble he was in?

"A. Yes, sir.

"Q. What did he say, Mr. Whitehurst?

"A. Oh, it was about that he thought he had killed somebody."

It is apparent that appellant was willing to freely discuss his actions with friends and acquaintances (including law enforcement officers). See Santiago v. State, Tex. Cr.App., 444 S.W.2d 758; Easley v. State, Tex.Cr.App., 448 S.W.2d 490; Gunter v. State, Tex.Cr.App., 421 S.W.2d 657; McCandless v. State, Tex.Cr.App., 425 S.W.2d 636; United States v. Hayes (5th Cir.) 385 F.2d 375; Charles v. State, Tex.Cr.App., 424 S.W.2d 909; Carter v. State, Tex.Cr. App., 445 S.W.2d 747; Gonzales v. State, Tex.Cr.App., 429 S.W.2d 882; Torres v. State, Tex.Cr.App., 422 S.W.2d 741.

The first fifteen grounds of error are overruled.

■■ By grounds of error 16 through 19, appellant contends the trial court should have instructed the jury in accordance with the statutes in effect at the time trial began, rather than the amended statutes; that his rights were not fully protected by the court's charge, and that the court's instruction in regard to oral confessions is violative of the holding in Rogers v. Richmond, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760.

The record reflects trial began on August 21, 1967, and that Articles 15,17 and 38.22, Vernon's Ann.C.C.P., as amended became effective August 28, 1967. The 1967 Laws of the 60th Legislature, Chapter 659, Sec. 41, provide:

"Any confession admissible at the time it was made shall be admissible at any trial subsequent to the effective date of this Act. The provisions of this Act shall not affect the admissibility of confessions made prior to the effective date of the Act."

We perceive no error in the court's charge; the amended statutes are not ex post facto as applied to this case. Ritchey v. State, Tex.Cr.App., 407 S.W.2d 506.

Furthermore, the court's charge fully protected appellant's constitutional rights in accordance with Miranda v. Arizona, supra, and we find no merit in his general allegation of harm. Reliance upon Rogers v. Richmond, supra, is misplaced as that case involved a coerced confession. Such an element is neither present nor alleged in the case at bar.

Grounds of error sixteen through nineteen are overruled.

■ Appellant brings as his 20th ground of error the contention that the court's charge on admissibility of his written and oral statements was "multifarious and duplicitous," and therefore confusing to the jury.

The record reflects that the trial court separately instructed the jury on the admissibility of the written and oral statements, and the law applicable to each. The requirements of Article 36.14, V.A.C.C.P., were clearly met. Ground of error number twenty is overruled.

■ By his twenty-first ground of error, appellant complains of the court's instructions to the jury in regard to the applicable law relating to oral and written statements. He further contends that the court strained to secure a favorable jury finding on the warnings given by Officer Cleboski, and thus in a subtle way commented on the evidence.

We find no such indication in the record. Further, as mentioned previously, we consider the first warning given as adequate.

Ground of error number twenty-one is overruled.

There being no reversible error, the judgment is affirmed.

MORRISON, Judge (concurring).

I do not agree with the majority that the appellant was not entitled to the services of an attorney while in Dallas, and at all times before he began confessing.

It is my opinion that the written confession was admissible and was obtained from the defendant after he had waived his constitutional rights against self-incrimination. When he agreed to be interviewed by newspaper reporters prior to the making of the written confession, he gave strong indication of his willingness to talk despite his right not to talk. The long written confession which was read to the jury and gave full, gory facts in detail, was so condemning as to render the admission of the oral confession harmless error. The oral confession, as given in the testimony, was brief and absent any details.

To paraphrase Harrington v. California, 396 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284, I can conceive of no "juror whose mind might have been made up because of" the oral confession.